*732 OPINION.
Teammell:
The petitioner states that there is no doubt but that he was a resident of the United States when he filed his income tax return in April 1929, prior to his departure to Eussia, where he was to render services in that country under a two-year contract. He, however, contends that under the facts in the case he was a resident of Eussia and not of the United States from May 1929 to May 1933, and that therefore the salary received by him from the Freyn Engineering Co. in 1931 is not subject to tax in the United States. The respondent contends that his action in determining that the petitioner was an alien resident in the United States in 1931 and that the salary in question was taxable was correct and should be sustained.
Pertinent portions of the Eevenue Act of 1928 are as follows:
SEC. 22. GROSS INCOME.
.(a) General definition. — “Gross income” includes gains, profits, and income derived .from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, * * * and income derived from any source whatever.
[[Image here]]
*733 (9) Miscellaneous items. — The following items, to the extent provided in section 116:
Earned income from sources without the United States;
****** *
SEO. 31. EARNED INCOME CREDIT.
(ft) Definitions. — For thf purpose of this section—
(1) “Earned income” means wages, salaries, professional fees and other amounts received as compensation for personal services actually rendered,
SEC. 116. EXCLUSIONS FROM GROSS INCOME.
In addition to the items specified in section 22 (b), the following items shall not be included in gross income and shall be exempt from taxation under this title:
(a) Earned income from sources without United States. — In the case of an individual citizen of the United States, a bona fide nonresident of the United States for more than six months during the taxable year, amounts received from sources without the United States if such amounts constitute earned income as defined in section 31; * * *
SEC. 119. INCOME FROM SOURCES WITHIN UNITED STATES.
*******
(c) Gross income from sources without United States. — The following items of gross income shall be treated as income from sources without the United States:
*******
(3) Compensation for labor or personal services performed without the United States;
* * * * * * *
Regulations 74, relating to the Revenue Act of 1928, provide as follows:
Art. 1022. Definition. — A “nonresident alien individual” means an individual—
(a) Whose residence is not within the United States; and
(b) Who is not a citizen of the United States.
An alien actually present in the United States who is not a mere transient or sojourner is a resident of the United States for purposes of the income tax. Whether he is a transient or not is determined by his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time, to return to another country is not sufficient to constitute him a transient. If he lives in the United States and has no definite intention as to his stay, he is a resident. One who comes to the United States for a definite purpose which in its nature may be promptly accomplished is a transient; but if his purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the alien makes his home temporarily in the United States, he becomes a resident, though it may be his intention at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned. An alien whose stay in the United States is limited to a definite period by the immigration laws is not a resident of the United States within the meaning of this article.
*734 Abt. 1025. Loss of residence hy alien. — An alien who lias acquired residence in tlie United States retains his status as a resident until lie abandons the same and actually departs from the United States. An intention to change his residence does not change his status as a resident alien to that of a nonresident alien. Thus an alien who has acquired a residence in the United States is taxable as a resident for the remainder of his stay in the United States.
In support of his contention that he was a resident of Russia from May 1929 to May 1933 and not a resident of the United States during this period, the petitioner relies in part on certain portions of his testimony as to his intentions and state of mind prior to and during this period. The petitioner testified that when he left the United States in April 1929 he considered that he was closing his affairs here, that he abandoned his residence here and took up his residence in Russia, and that while he anticipated at that time that if he did not return to the United States to live he probably would return to look after the securities held in the agency account with the Harris Trust & Savings Bank and certain real estate loans. He also testified that in 1931 he regarded his home as being in Russia and that he was not in such a frame of mind then that he could have said as to what country or place he would go in event his work in Russia terminated.
The two-year contract under which the petitioner went to Russia in April 1929 expired about May 1, 1931. Immediately prior to the expiration of that contract an arrangement was marie to extend the time of his service for another year. The permit to enter the United States issued to the petitioner on October 30. 1930. was due to expire on October 30, 1931. The evidence shows that on October 9, 1931, the petitioner made and swore to a request for an extension of this permit reciting that he resided at the Southmoor Hotel, 6646 Stony Island Avenue, Chicago, Illinois, and that the status of his business in Russia made it desirable for him to remain in Russia until the latter part of July 1932, when it was his intention to return to the United States. This indicates that in 1931 the petitioner still considered his residence was in Chicago, Illinois, and that it was his intention to return to the United States as soon as the status of his business in Russia would permit.
The regularity with which the petitioner made application for reentry permits when departing from the United States, the representations made in such permits, his action in returning to the United States just as soon as and just as often as his business engagements in Russia permitted, and his continued residence here since the final termination of his activities in Russia in our opinion do not indicate that the petitioner abandoned his residence in the United States when he went to Russia in 1929 or that he thereafter intended *735 to or did make Russia bis borne. If the petitioner intended to abandon his residence in the United States in April 1929 and thereafter take up his residence in and make his home in Russia, as he now testifies, it would seem that he would have informed his employer and his agent in the United States of such intention. The record fails to disclose that he gave them such information. As far as his employer was concerned, the petitioner left it under a contrary impression and left his agent wholly in doubt, as is evidenced by the incident relating to the filing of petitioner’s 1929 income tax return by his agent. The statement as to his future whereabouts made by the petitioner at a party in October 1930 to one who was then only a casual acquaintance but who later became his wife is without any particular significance. Neither appears to have attached any importance to their meeting or their conversation. In fact they never communicated with each other nor met again until in January 1934, when petitioner’s wife would not have known who he was if she had not been told. The statement itself fails to indicate that the petitioner then had any definite intention of staying in Russia any ionger than his business engagement required.
So far as we can determine the petitioner’s absence from the United States during the time he was in Russia was purely temporary and made necessary by his business engagement. Always prior to each of his departures the petitioner availed himself of the provisions of the immigration laws to obtain a reentry into the United States when his business engagement in Russia permitted his return here.
The Immigration Act of 1924, secs. 3, 4, and 10 (8 U. S. C. A. §§ 203, 204, and 210) provides in part as follows:
§ 203. “ Immigrant ” defined. — When used in this subchapter the term “ immigrant ” means any alien departing from any place outside the United States destined for the United States * * *
§ 204. “Nonquota immigrant” defined. — When used in this subchapter the term “nonquota immigrant” means—
* * * * * * *
(b) An immigrant previously lawfully admitted to the United States, who is returning from a temporary visit abroad;
(e) An. immigrant who was born in the Dominion of Canada * * *
§ 210. (a) Reentry permits; persons entitled to; application for; form and contents; verification; photograph accompanying. — Any alien about to depart temporarily from the United States may make application to the Commissioner General for a permit to reenter the United States, stating the length of his intended absence, and the reasons therefor. Such applications shall be made under oath, and shall be in such form and contain such information as may be by regulations prescribed, and shall be accompanied by two copies of the applicant’s photograph.
*736 (b) Issue by Commissioner General with approval of Secretary of Labor; life of permit; form and contents of permit; photograph attached. If the Commissioner General finds that the alien has been legally admitted toI the United States, and that the application is made in good faith, he shall, with the approval of the Secretary of Labor, issue the permit, specifying therein the length of time, not exceeding one year, during which it shall be valid. The permit shall be in such formi as shall be by regulations prescribed and shall have permanently attached thereto the photograph of the alien to whom issued, together with such other matter as may be deemed necessary for the complete identification of the alien.
(c) Extension, of life of permit. — On good cause shown the validity of the permit may be extended for such period or periods, not exceeding six months each, and under such conditions, as shall be by regulations prescribed.
* * * * * * *
(e) Surrender of permit on return to United States. — Upon the return of the alien to the United States the permit shall be surrendered to the immigration officer at the port of inspection.
(f) Effect of permit on rights of alien.. — A permit issued under this section shall have no effect under the immigration laws, except to show that the alien to whom it is issued is returning from a temporary visit abroad; but nothing in this section shall be construed as making such permit the exclusive means of establishing that the alien is so returning.
The phrase “ lawfully admitted ” as used in § 204 (b) means lawfully admitted for permanent residence, as was stated in International Mercantile Marine Co. v. Elting, 67 Fed. (2d) 886. In construing the meaning- of the word “ temporary ”■ in the phrase “ returning from a temporary visit abroad ” as used in §§ 204 (b) and 210, it was said in United States ex rel. Lesto v. Day, 21 Fed. (2d) 307:
The word “ temporary,” in the phrase “ returning from a temporary visit abroad,” means more than the mere retention of domicile; that is, an intention to keep the United States as a home, to which one will ultimately return. * * * Without attempting a complete definition of “ a temporary visit,” we may say that we think the intention of the departing immigrant must be to return within a period relatively short, fixed by some early event.
The length of time an alien is absent from the United States is not alone determinative of the question upon his return as to whether he is returning from a temporary visit abroad. In Serpico v. Truedell, 46 Fed. (2d) 669, an alien went abroad in 1914 to complete his education, leaving his parents' and other members of his family in the' United States. In 1925, after the completion of his education, he sought to return to the United States. It was held that although he had been absent 11 years he was returning from a temporary visit abroad and was entitled to be admitted to the United States.
In order to avail himself of the provisions of the immigration laws and obtain an easy reentry into the United States the petitioner held himself out to the immigration authorities as one who *737 had been admitted to the United States for permanent residence and represented that in going abroad he was not abandoning the residence and domicile established here, but was going abroad temporarily and would return just as early as his business engagement, the duration of which was fairly definitely fixed, would permit. Having thus held himself out and satisfied the immigration officials that his absence was to be only temporary and thereby having obtained the benefits of his action, we think he is to be bound by it. Little weight is to be given statements that he now makes to the effect that his intentions then were contrary to what his acts purported them to be.
In our opinion the facts in the case establish that the petitioner never acquired residence in Eussia, but retained his residence in the United States. The respondent’s action in determining that the petitioner was a resident of the United States during the taxable year and that the salary received for services rendered in Eussia is subject to tax is sustained. Cf. Frederico Stallforth, 30 B. T. A. 546; affd., 77 Fed. (2d) 548.
The petitioner urges that, should we hold that he was a resident alien of the United States during the taxable year, the salary received by him in that year for services in Eussia is nevertheless not taxable because of being excluded from gross income under section 116 (a) of the Eevenue Act of 1928. That section provides that, in the case of an individual citizen of the United States who is a bona fide nonresident thereof for more than six months during the taxable year, the amounts of earned income received from sources without the United States shall not be included in gross income and shall be exempt from taxation. The petitioner, while recognizing that the provisions of the section specifically apply to the case of an individual citizen of the United States, nevertheless urges that Congress, by providing in the other sections of the act the same deductions, credits and rates of tax for residents of the United States irrespective of whether they are citizens or aliens, has indicated an intention to treat citizens and resident aliens upon the same basis, and that we should therefore hold the provisions of section 116 (a) to be applicable to the salary in controversy. Statutes providing for exemptions from tax are to be strictly construed and are to be applied only to cases falling clearly within their intendment. Congress having expressly limited the provisions of section 116 (a) to the cases of citizens of the United States, such provisions may not be applied to the case of one not a citizen of the United States. Frederico Stallforth, supra.

Decision will 'he entered for the respondent.